## Ex Parte HARLAN.

[HABEAS CORPUS TO OBTAIN DISCHARGE UNDER CA. SA.]

1. *Privilege from arrest, by soldiers and officers in Confederate States army.*
A commissioned officer in the provisional army of the Confederate
States is not privileged from arrest under civil process, under the act
of congress of the United States approved March 3, 1799, (U. S. Stat-
utes at large, vol. 1, p. 750, § 4,) which was continued in force in the
Confederate States by the act of the provisional congress approved
February 1, 1861, nor under any other statute which is of force in
this State; and if he can claim such privilege on the ground of public
policy under the "conscript laws," (as to which *quære?*) he must
affirmatively show that he is within the provisions of said "conscript
laws."

2. *Bail process; affidavit by wife as agent.*—An affidavit to hold the de-
fendant to bail in a civil action, (Code, § 2175,) may be made by the
plaintiff's wife, as his agent.

THE petitioner in this case sued out a writ of *habeas cor-
pus,* returnable before the probate judge of Montgomery
county, on the 8th November, 1864, to procure his release
and discharge from the custody of the sheriff of said
county, whose return to the writ was in these words : "That
on the 7th November, 1864, a summons and complaint,
returnable to the February term, 1865, of the city court of
Montgomery, was sued out against said Thomas J. Harlan,
in favor of Walter M. Maddox, by one Caroline W. Mad-
dox, the agent for said Walter M. Maddox, having first
made affidavit, as by law required, that said Harlan was
indebted to said Walter Maddox in the sum of $6,950 59,
and given security for the costs of said suit; that the clerk
of said city court thereupon endorsed on said summons
that the sheriff should hold the defendant (the said Harlan)
to bail in double the amount so sworn to ; that said sum-
mons and complaint, with said endorsements thereon, was
delivered to said Young, he being then the sheriff of
said county, on the 7th November, 1864, to execute and
return ; that said sheriff, in pursuance of said summons
and complaint, and said endorsement thereon, arrested

said Harlan, and required him to give bail in double
said sum of $6,950 59, and, said Harlan not giving bail in
said amount, committed him to the jail of said county, and
now holds him under and by virtue of the premises afore-
said." On the hearing before the probate judge, "the said
Harlan proved, that at the time said summons and com-
plaint were sued out, and said affidavit and endorsement
were made, said Caroline Maddox was the wife of said
Walter M. Maddox, and said Harlan was, and thencefor-
ward has been, a lieutenant in the provisional army of the
Confederate States, and had orders from the proper officer
to report to the medical board at Montgomery for exam-
ination, with a view to ascertain whether he should be
placed on the retired list. On these facts, which constituted
all the evidence adduced on the trial, the probate judge deci-
ded that said Harlan was not entitled to be discharged from
custody, and remanded him accordingly; to which ruling
and decision said Harlan duly reserved a bill of exceptions."
By agreement of record between the counsel of both
parties in this court, it was admitted that the facts were
correctly stated in the copy of the bill of exceptions which
was made an exhibit to the petition, and that the court
might thereon render final judgment, as on formal returns
to the writs of *habeas corpus* and *certiorari.*

D. JORDAN, and B. F. LILLARD, for the petitioner.
GOLDTHWAITE, RICE & SEMPLE, *contra.*

STONE, J. —Although the petitioner was not "at the
front," as it is called in military phrase, still we think that,
for all legal purposes, he must be regarded as in the provis-
ional army of the Confederate States. The fact that "he
had orders from the proper officer to report to the medical
board at Montgomery, for examination, with a view to
ascertain whether he should be placed on the retired list,"
can not change his legal *status.* We can not know that he
will be placed on the retired list; and, if so placed, we do
not now decide whether such order would affect the question
now before us.—See Acts of 1st congress, 4th session,
p. 203.

By act of the provisional congress, (ch. 1, p. 27,) it is declared, that "all the laws of the United States of America, in force and in use, in the Confederate States of America, on the first day of November last," [1860,] "and not inconsistent with the constitution of the Confederate States, be, and the same are hereby, continued in force, until altered or repealed by congress." At that time, (November 1st, 1860,) the act of congress, "for the better organizing the troops of the United States, and for other purposes," approved March 3d, 1799, was in force and in use in the Confederate States, and is not inconsistent with its constitution.—See U. S. Statutes at large, vol. 1, pp. 749–51, § 4. But that statute exempts from arrest only "non-commissioned officers, artificers, privates, and musicians," and does not exempt commissioned officers. The present petitioner was, at the time of his arrest, a commissioned officer, and hence he is not exempted from arrest by the act of March 3d, 1799.

The 19th section of our military code does not protect Mr. Harlan from arrest. That section provides only for the militia or volunteers of this State; and it is not pretended that he belongs to either of those classes. We come, then, to the conclusion, that there is no statute, which, in terms, exempts the petitioner from arrest on civil process.

The court of appeals of South Carolina, during the war with Mexico, had before it the question of liability to arrest of a volunteer officer in the United States army; and ruled that, inasmuch as the act of congress exempted non-commissioned officers, privates, musicians, &c., and did not mention commissioned officers, the latter class were liable to arrest under civil process.—See *Moses v. Mellett*, 3 Strob. Law, 210.

The same question was before the supreme court of Georgia; and it was conceded that the act of congress did not exempt commissioned officers from arrest. That case went off under a construction of their State statute.—See *McCarthy v. Lowther*, 3 Kelly, 397.

This same discrimination, which exempts from arrest non-commissioned officers and privates, while it leaves

commissioned officers exposed to arrest, is found in the English statutes.—See 1st Tidd's Pr. 198-9.

Looking into the doctrine of privilege from arrest, we find it has a strong root in the common law itself, independent of all statute. Barristers, attorneys, suitors, and witnesses, while going to, remaining at, or returning from court as such, are of this class. This privilege rests on principles of public policy, and is not a mere boon to the party privileged.—See 1 Tidd's Pr. 190, *et seq.*

The same doctrine has been frequently recognized in this country, and it seems to be conceded that it rests on common-law principles, independent of all statutory regulation. See *Sadler v. Ray*, 5 Rich. Law, 523; *Page v. Randal*, 6 Cal. 32; *Blight v. Fisher*, Pet. C. C. 41; *Dixon v. Ely*, 4 Edw. Ch. 557; *Norris v. Beach*, 2 Johns. 294; *Wood v. Neale*, 5 Gray, 538; *Cole v. McClellan*, 4 Hill, (N. Y.,) 60, and note; *Sanford v. Chase*, 3 Cow. 381.

We have found no case which extends the privilege from arrest to officers in the army; and from this fact, and the fact that the act of congress of 1799 expressly exempts from arrest non-commissioned officers, privates, &c., and omits all mention of commissioned officers, it is contended that the latter class, to-wit, commissioned officers, must be held amenable to all the civil process of the country.

If this be a question in which only the parties to the suit are interested, there could be no doubt that this argument is sound. But we do not regard the question as limited in its operation to the parties to the suit. Under our military system, before conscription became the policy of the country, the officers in the army were in service from mere choice, and, as a general rule, could resign at any time, and leave the service. Speaking of the different relations which the commissioned officers and the privates sustained to the service, the court of appeals of South Carolina, in the case of *Moses v. Mellett, (supra,)* say: " The reason for the distinction is very manifest in the regular army. The service of the officer is optional, and honorary. It confers distinction, and is compensated by a liberal allowance to maintain the position in society which his rank in the army confers. The privates, &c., are enlisted for a certain period,

and are held to the terms of their enlistment, under severe
corporal penalties. Among them, it is necessary to main-
tain discipline, by painful constraint and severe penalties.
If, by the easy expedient of an arrest for debt, they could
evade service, the ranks of the army would be continually
reduced. The penalties for a violation of the rules and
regulations for their government, would, by this means, be
readily eluded, and discipline defeated." This argument is
strongly persuasive to show, that under a conscript system,
no such distinction between the non-commissioned officers
on the one hand, and the commissioned officers on the
other, would have prevailed ; inasmuch as the officers, if
within conscript age, are as much under restraint, and have
as little power to quit the service, as the privates have. If
they resign, they go into the ranks. But we have nothing
to do with this question. We have to deal with the law as
it is—not as it probably would have been made, under dif-
ferent auspices.

If the record before us showed that the petitioner is
within the conscript age, and therefore in the Confederate
service, whether he will or not to be so, the question will
arise, Is the conscription of a citizen such an appropriation
of his person, time and services, as that no State authority,
for the mere benefit of a private suitor, can deprive the
government of the same, or so impair the right as to mate-
rially affect its use? and if this question be answered in
the affirmative, is the arrest of such conscript under civil
process, issued at the instance of a private suitor, such a
deprivation, as will bring it within the rule? We do not,
in the present case, propose to discuss either of these
questions ; for the record does not present them.

It is a cherished principle in this court, that error will
not be presumed, but must be affirmatively shown; that we
will not presume the existence of facts, not shown by the
record, as a ground for the reversal of the judgment of a
primary court; but that all intendments and presumptions,
consistent with the statements found in the record, will be
indulged in favor of the correctness of the ruling in the
court below.—See *School Comm'rs v. Godwin,* 30 Ala. 242,
and authorities cited. The present record is silent on the

question of the age of the petitioner. We do not, and can not, know that he is within the conscript age. There are many volunteers in the provisional army, who are not within conscript age, and who are not there by compulsory enroll-ment. Mr. Harlan may be one of this class; and, hence, he may be in the service only as a volunteer. If so, he does not come within any rule which exempts him from arrest, he being a commissioned officer. In the case sup-posed, he comes precisely within the rule declared in *Moses v. Mellett*, and *McCarthy v. Lowther, (supra,)* and is not exempt from arrest under the act of 1799, or of any other statute known to us.

The petitioner in the present case failing to show that he is privileged from arrest, it is our duty to presume that the primary court had a good and valid reason for the judg-ment rendered by it; and, hence, we find no error in this feature of the case.

[2.] Bail process may be sued out by an agent of the plaintiff; and there was no error in allowing the plaintiff's wife to act for her husband in this behalf.

The writ of *habeas corpus* is refused.